FILED
SEP 0 9 2002
LARRY W. PROPES, CLERK
COLUMBIA, S.C.
Entered: 9/9/02

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| WANDA M. BRYANT, ) | C.A. No. 1:00-1224-22 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER ON POST TRIAL MOTIONS** |
| ) | **AND** |
| AIKEN REGIONAL MEDICAL ) | **ATTORNEYS' FEES** |
| CENTERS, INC., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Plaintiff's petition for attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988(b), and on Defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court denies Defendant's motion in full and grants Plaintiff's motion in part.

**I. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL**

In an order entered June 6, 2002, this court confirmed various damage awards and made other damage determinations, resulting in a net verdict for Plaintiff of $300,000, plus prejudgment interest in excess of $7,700. In confirming the jury's award of damages and making its own damages determinations, the court discussed, in detail, the adequacy of the evidence to support both the liability and damages determinations. Related issues were also addressed in this court's oral rulings during and at the conclusion of trial and, earlier, in this court's order and the magistrate judge's Report and Recommendation on Defendant's motion for summary judgment.

Defendant's arguments in favor of its present motion for judgment as a matter or law or for a new trial have all been adequately addressed in these prior orders and oral rulings, or raise matters

AO 72A
(Rev.8/82)

which have not been preserved. Therefore, for reasons stated in this court's prior oral rulings and written orders and for the reasons set forth in Plaintiff's opposing memorandum, Defendant's post trial motions are denied.

## II. PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

### A. Parties Arguments

#### 1. Plaintiff's Initial Petition

In her initial petition, Plaintiff requests attorneys' fees in the amount of $110,216.25 and costs in the amount of $4,874.25. The time is calculated at the rate of $225 per hour for 489.85 hours of work by counsel. Most of the work was performed by a single attorney, although two attorneys were present for trial. The only charge for any work done by non lawyers is a single charge of $229.50 for law clerk assistance which is included in the costs.[1]



Plaintiff supports her initial petition with an affidavit and documentary evidence supporting her position that counsel expended 489.85 hours of attorney time in connection with the matter. This time was expended over the course of three years and included assistance with EEOC administrative proceedings. As noted, the action involved significant motions practice before the district court including extensive briefing in response to Defendant's partially successful motion for summary judgment, briefing of several motions in limine (on which Plaintiff was wholly successful), and post-trial submissions (on which Plaintiff was successful on all but one issue). In her memorandum and supporting affidavit, Plaintiff also asserts that time related to matters on which she was unsuccessful has been eliminated.[2]

---

[1] The relevant entry indicates that the time was billed at $15 per hour.

[2] The memorandum states that: "The number of hours recorded by counsel does not include any time spent on matters on which Plaintiff did not prevail, such as the class action allegations, the

2

Plaintiff further supports her application with affidavits from two local attorneys with substantial employment law litigation experience. Each of these attorneys opines that the amount of time and labor for which Plaintiff seeks recovery appears reasonable.

In regard to the hourly rate, Plaintiff asserts that both of the attorneys for whose time she seeks recovery currently charge their non contingent clients at a rate of $175 per hour. Nonetheless, she presents evidence that $225 per hour is a reasonable rate for the type and quality of work done in this particular matter. This evidence includes the affidavits of the two attorneys referenced above. Plaintiff also argues that some enhancement over the fee her attorneys normally charge non contingent clients is warranted to compensate for the contingent nature of the fee.

Finally, Plaintiff argues that the rate and total fee sought is warranted by her substantial success. While not wholly successful on all claims, Plaintiff was awarded substantial damages including: back pay of $40,000; compensatory damages for emotional distress of $50,000; and punitive damages of $210,000. As to the matters on which she was not successful, Plaintiff notes that she voluntarily withdrew the class action allegations and that her ultimate recovery would not have been any greater had she recovered under her contract based claims.

As to costs, Plaintiff notes that the total advanced was $5,619.25. She is, however, seeking recovery only of $4,874.25, having reduced the total sought by "[d]eleting the costs relating to the state-law claims, or Plaintiff's request to enhance the amount of the back-pay award to account for tax consequences. In addition, Plaintiff's counsel have made 'a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary.'" Plaintiff's Memorandum at 3 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In the accompanying affidavit, her counsel asserts that the 489.85 hours "does not include any time spent in connection with the class action claims [which Plaintiff] eventually abandoned, nor does it include any time in connections with Defendant's motion to compel relating to the abandoned class allegations. Further, I have deleted all time in connection with our request for enhancement of the back-pay award to account for the tax consequences to [Plaintiff], because we did not prevail on that issue." Rothstein Affidavit ¶ 11.

class-action allegations and the tax issue." *See* Rothstein Affidavit at ¶ 13.

   2. **Defendant's Opposition.**

In Defendant's memorandum in opposition to Plaintiff's initial fee petition, Defendant argues, initially, that the court should defer ruling on the fee petition application until the post trial motions (addressed above), are resolved. In addition, Defendant argues that the fees should be reduced because Plaintiff failed to prevail on the following matters: (1) Plaintiff's class action allegations; (2) Plaintiff's claim for breach of the tuition reimbursement contract; (3) Plaintiff's claim for breach of the covenant of good faith and fair dealing implied in the same contract; and (4) Plaintiff's claim for race discrimination in regard to her pursuit of a surgical technician position. As Defendant notes, Plaintiff's counsel's *affidavit* only states that he excluded fees and costs related to pursuit of class certification and to Plaintiff's unsuccessful pursuit of an enhancement of damages to account for tax consequences. *Supra* note 2 (comparing language in brief to language in affidavit).

Defendant also argues that Plaintiff's counsels' time entries are not sufficiently precise. In this regard, Defendant cites a number of time entries which provide a fairly general description for relatively large time blocks. For example, on four successive days, the entries read "Prepare (work on) brief in opposition to summary judgment," or substantially similar wording. The time entries for these days range from 3.2 to 10.5 hours. Three other entries on successive days read "Prepare (work on) file." The time entries for these days range from 5.2 to 6.6 hours. Based on the lack of detail, "Defendant requests a percentage reduction of fifty (50%) percent as a reasonable reduction to account for issues on which the Plaintiff was a prevailing party and on those for which she did not prevail." Defendant's Memorandum at 6.



Defendant also objects to two and one half hours of time charged by an attorney to deliver an exhibit to trial counsel. Likewise, Defendant objects to other time entries that involved or may have involved clerical work. Such entries included references to filing documents with the court and the above-referenced vague entries such as "Prepare (work on) file."

As to the hourly rate requested, Defendant concedes that it is appropriate to use a current rate to pay for time worked in prior years in order to compensate for the lost time value of the money. By contrast, Defendant challenges use of a rate higher than the rate normally charged by the same attorneys for work done on a non contingent basis.

In addition, Defendant argues that Plaintiff should be limited to a single attorney at trial. Defendant argues that use of two attorneys resulted in "redundant and excessive" charges, particularly where both attorneys seek to charge at a "lead counsel" rate of $225 per hour.

Defendant does not challenge any of Plaintiff's costs except for a $48.51 charge for postage. Defendant argues that such a charge is not an allowable cost. Defendant's Memorandum at 16 (citing *Wolfe v. Wolfe,* 570 F. Supp. 826, 828 (D.S.C. 1983) (applying 28 U.S.C. § 1920)). Defendant, therefore, argues that the allowable costs should be limited to $4,825.74.

3.  **Plaintiff's Reply and Supplemental Petition**

Plaintiff's reply addresses a number of Defendant's concerns and seeks an additional $5,085 in attorneys' fees and $92.92 in costs. These fees and costs were incurred after the initial petition was filed and cover Plaintiff's preparation of responses to Defendant's post trial motions and memorandum in opposition to Plaintiff's fee petition. The time expended in these efforts was 22.6 hours.

As to Defendant's challenges to the hours and fees sought, Plaintiff notes that the defense firm billed their client nearly $149,000 for work on the case for roughly the same period for which

Plaintiff sought just over $110,000. Plaintiff also attaches summary and detailed bills from the defense firm which reflect: hourly rates charged by the defense firm in line with those sought by Plaintiff ($175 for a junior attorney and $250 for lead counsel); a similar degree of specificity in description of the work done; and a significantly greater staffing of the case by the defense firm (use of multiple attorneys and paralegals throughout the pendency of the action).

Plaintiff also argues that the contract based claims on which she was unsuccessful required little work beyond that which would have been done had she pursued only the claims on which she ultimately succeeded. Further, she argues that had she been successful on her contract based claims she would not have achieved any better ultimate result. She argues, therefore, that no reduction is appropriate because these were merely additional legal theories on which the same recovery could be had.[3]

Plaintiff concedes, however, that the fees charged for delivery of exhibits should not have been charged at an attorney rate, even if the actual work was done by counsel. Rather than reducing the rate, Plaintiff eliminates the request for reimbursement of this time.

Therefore, combining the original fee and cost petition with the supplemental petition, less the one charge Plaintiff conceded, Plaintiff modifies her petition to seek payment for 509.95 hours of attorney time at $225 per hour for a total of $114,738.75 in fees, plus $4,967.17 in costs.

**No Opposition to Supplemental Petition.** Defendant did not file any opposition to the supplemental fee petition.

---

[3] By this argument, Plaintiff appears to concede that time related to these claims was not excluded from the hours billed. *See supra* note 2.

6

**B.     Discussion**

**1.     Costs and Expenses**

Costs and expenses recoverable under statutes providing for attorneys' fees and reasonable expenses are those reasonable and necessary out-of-pocket expenses that attorneys normally pass on to their clients such as for duplicating fees and attorney travel expenses. *Daly v. Hill,* 790 F.2d 1071, 1083-84 & n. 18 (4th Cir. 1986). Defendant does not challenge the payment of any costs other than the charge for postage. While such a charge would not be allowed as a cost pursued under 28 U.S.C. § 1920, it is the type of reasonable and necessary out-of-pocket expense normally passed on to clients and, therefore, subject to recovery as an expense under a fee shifting statute.[4] This court, therefore, awards Plaintiff the full $4,967.17 requested.

**2.     Attorneys' Fees**

**a.     Standard**

In determining the reasonableness of a request for attorneys' fees, a court should consider the following twelve factors:

> (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or

---

[4] Defendant relies on the trial court's opinion in *Wolfe* for the proposition that postage expenses are not recoverable. Although the court there was addressing the award of fees and costs under a fee shifting statute, it looked only to 28 U.S.C. § 1920 in determining what costs could be allowed. *Wolfe,* 570 F. Supp. at 828. To the extent this opinion may suggest that the costs under a fee shifting statute are limited to those allowable under 28 U.S.C. § 1920, it would appear to be inconsistent with the later Fourth Circuit opinion cited in the text. Other more recent Fourth Circuit opinions also suggest a growing leniency as to the scope of allowable costs even under Section 1920. *See LaVay Corporation v. Dominion Federal Savings & Loan Assoc.,* 830 F.2d 522, 528 (4th Cir. 1987) (finding court erred in denying costs for taking of deposition based solely on the fact that the deposition was not admitted at trial).

circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) fee awards in similar cases.

*Trimper v. City of Norfolk Va.*, 58 F.3d 68, 73 (4th Cir. 1995). These factors are generally referred to as the *Johnson* factors as they were first enunciated in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). They were adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). In more recent cases, the courts restate the sixth factor as relating to counsel's expectations at the outset of the litigation. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *E.E.O.C. v. Service News Co.*, 898 F.2d 958 (4th Cir. 1990)).

While the court must consider all of the factors, they need not be applied in any strict manner as not all may affect the fee in a given case. *See Service News*, 898 F.2d at 965 (finding seven of the twelve factors did not affect the fee in that case, but remanding for further proceedings due to the district court's failure to explain the basis of its fee determination). These factors are considered both in determining the propriety of the rate requested and the reasonableness of the hours expended "which are then multiplied to determine the lodestar figure which will normally reflect a reasonable rate." *Service News*, 898 F.2d at 965 (citing *Daly v. Hill*, 790 F.2d at 1077). The resulting lodestar figure is strongly presumed to be the reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557 (1992)(rejecting contingency fee enhancement under the fee shifting statutes there at issue: the Clean Water Act and the Solid Waste Disposal Act). *See also Trimper*, 58 F.3d at 74 (lodestar fee based on multiplication of reasonable rate by reasonable hours is presumed to be fully compensatory without producing a windfall).

When a fee applicant has pursued both successful and unsuccessful claims, "the most critical

factor . . . is the degree of success obtained" because when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole may be an excessive amount." *Brodziak,* 145 F.3d at 196-97 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In determining whether to reduce the compensable hours, the court must first determine "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Id.*

> In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. *Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.* . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and *therefore no fee may be awarded for services on the unsuccessful claim.*

*Hensley,* 461 U.S. at 434-35 (emphasis added, internal quotations omitted). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded." *Id.*

### b.    Allowable Rate

This court finds an hourly rate of $185 per hour to be an appropriate average rate to apply. In making this determination, this court finds the following *Johnson* factors to be the most relevant: "(3) the skill required to properly perform the legal services; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; . . . (9) the experience, reputation, and ability of the attorney; . . .. and (12) fee awards in similar cases. The court has, nonetheless, considered other *Johnson* factors discussed below.



**Counsel's Normal Rates.** This court begins its analysis by considering the rates normally charged to clients who pay on a non contingent basis. These rates are significant as they suggest the market's determination of at least the fifth (customary fee) and ninth (experience, reputation and ability of counsel) *Johnson* factors. *See Trimper,* 58 F.3d at 76 ("the proper measure of fees is the prevailing market rate in the relevant market, and not the rate charged by the actual attorney in question"); *Rum Creek Coal Sales v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (noting that relevant market normally is the district in which the court sits). Moreover, the lost opportunity cost (fourth factor) in a case such as this, which can be presumed to preclude other work on an hour-for-hour basis, will be the amount that counsel otherwise might have charged another client for the same time. Applying a current rate to hours worked during earlier times is also appropriate to compensate for the time value of the deferred compensation.[5]

In the present case, it is undisputed that both of the attorneys who worked on this matter normally charge their non contingent clients $175 per hour.

**Third (skill required) and Ninth (experience and reputation) Factors.** The present action presented a number of challenging legal issues and difficult factual development. While the area of law may not be the most complex, it is certainly far from simple, and it is an area that is constantly evolving. Plaintiff's attorneys demonstrated significant skill both in their briefing and argument of the various legal issues as well as in their performance at trial. Further, from what this court has observed, Plaintiff's attorneys have and deserve excellent reputations in the relevant areas

---

[5] Such a means of compensating for the delay in receipt of payment has been approved by various courts. *See, e.g., Daly,* 790 F.2d at 1081. The Fourth Circuit has recently reaffirmed that attorneys' fee awards should take into account "the effect of delay of payment on the value of the fee" rather than simply awarding the "historic rate." *Johannsen v. District No. 1,* No. 01-1608, Slip Op at 30 (4th Cir. May 20, 2002) (published opinion).

of the law.

The affidavits submitted by Plaintiff indicate that rates for experienced employment law attorneys range from $175 to $300 per hour.[6] The attorney who handled the majority of the work in this matter has significant experience in the relevant substantive law, although he is not a certified specialist. Similarly, while both of the attorneys who represented Plaintiff at trial demonstrated significant skill and ability, neither has so many years of trial experience as to be considered a senior attorney. Both of these attorneys, as noted above, regularly charge $175 per hour to their clients who pay by the hour.



While, as noted, Plaintiff's lead counsel demonstrated significant skill in a specialized area in preparing and trying this case, the time sheets also demonstrate that the same attorney was responsible for more mundane work, and even some work that might have been done by a paralegal. This court is not, therefore, prepared to presume that all of the work done required the level of expertise of an employment law expert. See *Johnson,* 488 F.2d at 717 ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate."). At the same time, the court does not suggest it is inappropriate for a single attorney to handle all aspects of pretrial and trial preparation in an appropriate case, even though some aspects of the work might be subject to performance by others who might charge at lower rates. Whether division

---

[6] In her affidavit, M. Malissa Burnette, Esquire, who has practiced law since 1982 and has been a Certified Specialist in Employment and Labor Law since 1994, stated that her current rates range from $175 to $225 per hour. Victoria Eslinger, Esquire, who has also been a Certified Specialist in Employment and Labor Law since 1994, and has practiced law since 1973, stated that her standard hourly rate in such matters is $285 while the rates for "employment lawyers in South Carolina with extensive experience" range between $225 and $300 per hour.

11

of labor is appropriate must be determined by the individual attorney based on considerations such as: the risk that efficiency will be lost when work is divided among multiple timekeepers; the relative amounts of different levels of work to be done; and available staffing. In the present case, considering both the overall charges and the knowledge and skill exhibited by lead counsel, the court can find no fault in not having delegated more work to a paralegal. Therefore, rather than addressing these considerations by attempting to separate out work that was more technical, and that which was more routine or even that small portion which might have been subject to performance by a paralegal, the court will consider the variety of work performed in determining a proper overall rate.

**Second Factor (novelty and difficulty).** As noted above, Plaintiff's attorneys demonstrated substantial skill and knowledge in an area of the law which is constantly evolving and relatively complex. They also performed well as trial attorneys. The quality of counsels' oral and written arguments was of great assistance to the court.

**Fourth Factor (lost opportunity cost).** It can be presumed that each hour spent on this action was an hour that could have been spent on work for other clients. It might also be presumed that the work could have been done on a non contingent basis. There is no indication that undertaking this action otherwise precluded counsel from undertaking other work. Thus, the lost opportunity cost is equal to the rate counsel would have charged at the time the work was done, enhanced as appropriate for the time delay in receipt of payment.

**Sixth Factor (expectations/contingency).** Counsel's reasonable expectations at the outset of the litigation could only be that the court would award a reasonable hourly rate for work done on successful claims. This court does not, therefore, believe that this factor justifies any different rate than would be supported by the other factors.

**Seventh Factor (time limitations).** Plaintiff concedes that there were no special time

limitations imposed by the client or circumstances which would justify a higher rate. *See Johnson,* 488 F.2d at 718 (indicating this factor comes into play when a case requires special priority treatment).

**Tenth Factor.** The court has also considered Plaintiff's assertion that cases of this sort are sometimes undesirable. In this regard, Plaintiff argues not that employment cases in general are undesirable, but that those with likely modest recovery (here because of Plaintiff's ability to mitigate her actual damages) are less desirable than others. Nonetheless, as Plaintiff notes, it is the availability of attorneys' fees which balances these concerns. Thus, while this factor justifies a fully compensatory fee, it does not justify any upward enhancement of the rate. *See Johnson,* 488 F.2d at 719 (considering this factor for categories of cases which will likely result in counsel "fac[ing] hardships in their communities" that result in "economic impact on [their] practice[s]").[7]



**Twelfth Factor (fee awards in similar cases).** Plaintiff has drawn to this court's attention other recent employment cases in this district in which the court allowed total fee awards in the range that Plaintiff seeks. In one of these cases, the rate awarded was $175 to an attorney who appears to have similar skills and experience. Plaintiff has also drawn this court's attention to the rates charged by defense counsel: $175 per hour for the junior attorney; and $250 per hour for lead counsel. While informative, this court does not find the defense firm's rates to be determinative.

**Conclusion as to rate.** In light of the factors addressed above, most particularly the skill with which counsel handled the various novel and difficult issues presented in this action, this court concludes that the work done should be compensated at a rate in excess of counsels' normal hourly rate of $175 per hour. The contingent nature of the fee, the delay in compensation, and the need to

---

[7] The court in *Johnson* was expressly addressing the hardships faced by counsel who undertook representation in civil rights cases in the late 1960's in the Northern District of Georgia.

attract competent counsel with specialized skills to handle cases of this nature also support application of a rate above $175. Nonetheless, the enhancement should be limited to reflect the variety of work performed by counsel, not all of which required the same level of skill. Balancing these considerations, this court determines that an average rate of $185 per hour is appropriate. This rate will be used for all time periods to account for the time delay in receipt of payment.

### c.     Allowable hours

This court finds the following *Johnson* factors to be most relevant in determining the number of hours to be compensated in this action: "(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; . . . (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; . . . (6) the attorney's expectations at the outset of the litigation; (7) the limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; . . . and (12) fee awards in similar cases."

Of these factors, however, the fourth, sixth, and seventh do not militate in either direction. That is, the court concludes that the only work "precluded" was precluded on an hour-for-hour basis as discussed above. To the extent hours reasonably expended on successful claims are compensated at a reasonable rate, that is all that is appropriate. Similarly, the attorneys' reasonable expectations at the outset of the litigation would have been that they would recover a reasonable rate for necessary work on successful claims (or on issues sufficiently intertwined with the successful claims to have been necessary to successful litigation). Finally, as Plaintiff concedes, there were no special limitations or circumstances beyond the necessary investment of time in pursuing the successful portions of this litigation.

This court, therefore, concludes that the most significant factors to be considered in

determining compensable hours in the present case are the remaining four *Johnson* factors: "(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; . . . (8) the amount in controversy and the results obtained; . . . and (12) fee awards in similar cases." Because the eighth factor ("results obtained"), bears significantly on the court's application of each of the other factors, the court will address that factor first.

**The Amount in Controversy and the Results Obtained.** Plaintiff pursued recovery for two basic wrongs: the denial of a promotion to a surgical technician position, and the denial of a promotion to a nursing position. She also pursued recovery under more than one theory as to each of the two alleged wrongs. Ultimately, although she was not successful on all theories, Plaintiff achieved full recovery for the alleged denial of a promotion to a nursing position and partial recovery for the denial of promotion to a surgical technician position. The recovery on the latter was partial in that it covered a shorter period of time (found only a later improper action), than Plaintiff had alleged. Nonetheless, Plaintiff was largely successful and achieved an excellent result.

**Time and Labor Required to Litigate the Suit.** In considering the time and labor required to litigate the suit, this court compares the time and labor necessarily expended relative to successful claims to the time and labor expended on unsuccessful matters. Having done so, this court concludes that the hours sought are reasonable.

In his affidavit Plaintiff's lead counsel avers that he is not seeking time related to certain matters such as pursuit of class action status and an enhancement of the back pay award to account for adverse tax consequences. This court finds no reason to believe that counsel has failed to exclude hours relative to the issues of class certification and the unsuccessful motion to enhance the back pay award.

Further, while Plaintiff was not successful on all theories of recovery (most particularly the contract related claims), this court finds that the various claims were sufficiently intertwined that only minimal time would have been saved had Plaintiff only pursued her ultimately successful theories in the first instance. Moreover, it must be presumed that in most every action a successful party will be unsuccessful in some matters. Again, therefore, the court declines to reduce the compensable hours on this basis.

The court has concluded that no reduction is appropriate based on Plaintiff's pursuit of the unsuccessful contract based claim. It also accepts lead counsel's assertion that time relative to other abandoned or unsuccessful matters has been excluded. Finally, the court finds that the overall time expended is reasonable in relation to the issues raised and recovery obtained. For these reasons, any insufficiency in detail in the bills is of minimal significance. Nonetheless, the court encourages counsel to include greater detail where practicable.[8]

**Novelty and Difficulty of the Questions Presented.** As discussed in regard to the rate, the area of law at issue in this action is one in which a degree of specialization is helpful. Moreover, the particular issues raised in this action required significant legal research and the preparation of detailed memoranda. Finally, the written and oral arguments presented by Plaintiff's counsel reflected not only the skill held by counsel, but a significant investment of time in researching and drafting. In short, the hours for which recovery is sought appear to this court to be consistent with

---

[8] The court's concern is greatest as to those multiple entries which cover several hours but describe the work as only "Prepare (work on) file." The general description of work on the summary judgment motion is less of a concern, although it would be helpful if some distinction was made as to the particular issues addressed in a given day, to the extent that can reasonably be done. At the same time, the court does not suggest that billing entries should be so detailed as to become a project in themselves. It also recognizes that certain projects such as editing a previously drafted brief may not be subject to division by issue.

the novelty and difficulty of the questions presented.

**Fee Awards in Similar Cases.** The hours for which recovery is sought in this action are within the range for which counsel have been compensated in similar actions. It is also in keeping with the hours incurred in defense of this action.

d.    **Fee Calculation.**

This court concludes that Plaintiff is entitled to an award of attorneys' fees of $94,340.75, reflecting compensation for 509.95 hours at a rate of $185 per hour.

## CONCLUSION

For the reasons stated above, this court finds that Plaintiff is entitled to attorneys' fees in the amount of $ $94,340.75, and expenses and costs in the amount of $4,967.17.

IT IS SO ORDERED.

*Cameron McGowan Currie*
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 9, 2002

O:\Civil Orders\Employment\00-1224-bryant v aiken reg'l -- atty fees.wpd

AO 72A
(Rev.8/82)